**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| COOK INLETKEEPER; SIERRA CLUB; ALASKA SURVIVAL, <br><br>      Plaintiffs - Appellants, <br><br>   v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS; THOMAS P. BOSTICK, Commander and Chief of Engineers, U.S. Army Corps of Engineers; CHRISTOPHER D. LESTOCHI, Colonel, District Commander, U.S. Army Corps of Engineers, Alaska District, <br><br>      Defendants - Appellees, <br><br> and , <br><br> ALASKA RAILROAD CORPORATION; MATANUSKA SUSITNA BOROUGH, <br><br>      Intervenor-Defendants - Appellees. | No. 13-35101 <br><br> D.C. No. 3:12-cv-00205-RRB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Alaska

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted August 15, 2013
Anchorage, Alaska

Before: KOZINSKI, Chief Judge, and BERZON and IKUTA, Circuit Judges.

Plaintiffs-Appellants Cook Inletkeeper, Sierra Club, and Alaska Survival (collectively, "Inletkeeper") appeal from the District Court's order denying their motion for a preliminary injunction enjoining construction of the Port MacKenzie Rail Extension. Reviewing the District Court's order for abuse of discretion, we affirm.

**1.** The District Court did not abuse its discretion in concluding that Inletkeeper was not likely to succeed on its claim that the United States Army Corps of Engineers ("Corps") erred in issuing a § 404 permit because a less environmentally damaging practicable alternative was available—namely the construction of elevated rail over part or all of the wetlands traversed by the project. We previously held in *Alaska Survival v. Surface Transportation Board*, 705 F.3d 1073, 1088 (9th Cir. 2013), that the elevated rail alternative could reasonably be deemed infeasible for National Environmental Protection Act ("NEPA") purposes. That conclusion makes it exceedingly unlikely that it was unreasonable for the Corps to deem this alternative impracticable under the Clean

Water Act ("CWA").  Further, the record supports the determination that the Corps reasonably concluded, after consultation with Alaska Railroad Corporation ("Railroad"), that the elevated rail alternative would significantly raise project costs and introduce new logistical problems, and that the Corps did not blindly accept the Railroad's representations of cost and logistics.

**2.**  The District Court also did not abuse its discretion in denying the preliminary injunction as to the other issues raised, because irreparable harm is unlikely.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132-35 (9th Cir. 2011) (discussing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 19-24 (2008)).

Inletkeeper did not show irreparable harm, in the absence of an interim injunction, resulting from its claim that the Corps did not calculate properly the amount of compensatory mitigation.  Inletkeeper alleges faults with the functional assessment analysis upon which this calculation was based, including the exclusion of the water quality and wetland plant diversity functions from that assessment. Inletkeeper has not faulted the data collection performed by the Railroad's contractor, which gathered information on all of the relevant variables, including the water quality and wetland plant diversity functions; instead, it challenges the way in which that data was analyzed.  If Inletkeeper ultimately were to succeed on

3

this claim, the analysis could be redone, and the Railroad could be required to purchase additional compensatory mitigation credits, fully remedying the harm.[1]

Similarly, it was not an abuse of discretion for the District Court to conclude that the chance of irreparable harm based on Inletkeeper's claim that the Corps failed to consider properly the impact on the wetlands outside of the project's footprints is small. The Corps assessed the impact outside the project footprint and imposed special conditions in the § 404 permit requiring the incorporation of culverts and bridges that would maintain "natural wetland drainage and inundation patterns" and would not interfere with fish passage. The Corps reasonably determined that such culverts and buildings can be effective in maintaining wetland hydrology, and the record supports the conclusion that the surrounding wetlands will be sufficiently benefitted by those conditions to avoid irreparable harm while this case is pending.

**AFFIRMED.**

---

[1] We take the Corps' and the Railroad's statements at argument that the record does contain data collected about the functional capacities in 2008 and 2010, including data regarding the two functions that were excluded from the functional assessment analysis, as representing that the data still available is sufficient to redo the functional assessment categorization entirely and properly if Inletkeeper ultimately were to prevail on this claim.